427 P.2d 36

Ingrid HICKSON, Plaintiff-Appellant,

v.

Jack HERRMANN, Defendant-Appellee.
No. 8109.

Supreme Court of New Mexico.

April 24, 1967.

A. D. Solsbery, William F. Brainerd, Roswell, for appellant.

Osborn & Laughlin, Roswell, for appellee.

## OPINION

WOOD, Judge, Court of Appeals.

The appeal concerns the right of a divorced wife to share in the proceeds of an insurance policy.

The policy was acquired during the marriage of the parties. It is not disputed that the policy was community property when acquired. See In Re White's Estate, 43 N.M. 202, 89 P.2d 36 (1939); In Re Miller's Estate, 44 N.M. 214, 100 P.2d 908 (1940).

The policy insured the life of the minor child of the parties. After the parties were divorced the minor child died. The proceeds of the policy were paid to defendant as the first beneficiary designated in the policy. Plaintiff, the former wife, sued to obtain one-half the proceeds. She appeals from the judgment dismissing her complaint.

Plaintiff and defendant entered a property settlement agreement in connection with

the divorce. The trial court found that at the time the parties entered this agreement, the parties intended that the policy and its benefits were to be the sole and separate property of the defendant. It found that from the date of this agreement the defendant owned the policy and its proceeds as his sole and separate property. Plaintiff attacks these findings as being unsupported by the evidence.

The issue is whether there is substantial evidence to support a finding as to the intent of the parties. We hold that such evidence is lacking.

The agreement recites that the parties desire to settle their community property rights. That they desired to settle is not evidence of how they intended to settle.

■ Various items of property are expressly divided by the agreement. Two items are set over to the wife as her sole and separate property. The agreement makes no such express provisions concerning either the policy or its proceeds. The only reference to the policy in the agreement is that the husband is to maintain the policy. An obligation to maintain does not disclose an intent as to the ownership. The agreement neither refers to the proceeds of the policy nor to the beneficiary.

The husband testified that he volunteered to maintain the policy. The reason was an intention on his part that at some future date the policy would either be given to the child or be used for the child's education.

The wife testified that the policy belonged to both of the parties. The husband testified that he didn't realize the policy was a part of the divorce settlement and that the circumstances here involved were not contemplated.

■ The husband intended to keep the right to control the policy; but control, like maintenance, is separate from ownership. As to this distinction, see § 57–4–3, N.M. S.A. 1953. The husband paid the premiums from his separate funds after the divorce. This might give rise to a right to reimbursement (see Shanafelt v. Holloman, 61 N.M. 147, 296 P.2d 752 (1956); Laughlin v. Laughlin, 49 N.M. 20, 155 P.2d 1010 (1945); McElyea v. McElyea, 49 N.M. 322, 163 P.2d 635 (1945)), but it does not show the intent of the parties concerning ownership of the policy and its proceeds.

■ Other evidence on which the defendant relies to sustain the trial court is (1) she was represented by counsel of her choice and (2) the policy had neither cash nor loan value at the time of the divorce. Again, these facts do not disclose an intent concerning ownership.

The agreement did not provide that the policy and its proceeds were to be the sole and separate property of defendant. The evidence does not show that the parties intended such a disposition. Thus, what

ever the rights of the parties in the policy and its proceeds, those rights have not been affected. Section 22-7-22, N.M.S.A. 1953. The only change is that if the rights were community property prior to the divorce, such rights are now owned as tenants in common. Jones v. Tate, 68 N.M. 258, 360 P.2d 920 (1961); In Re Miller's Estate, supra.

■ Since the policy was community property prior to the divorce, the parties owned the policy as tenants in common after the divorce. However, we are not necessarily concerned with ownership of the policy. The issue is ownership of the proceeds of the policy. Unless ownership of the policy affects the right to receive the proceeds, its ownership is not important to the problem presented.

. In two cases, In Re White's Estate, supra, and In Re Miller's Estate, supra, it was held that the proceeds had the same status as the ownership of the policy. This was because the insured was the owner of the policy and the insured's estate was the beneficiary. Under these facts, ownership of the policy and ownership of the right to receive the proceeds is identical. Here, that is not necessarily so. The proceeds of the policy were not payable to the owner or to the owner's estate; they were payable to defendant. Defendant may own the policy in a manner different from the way he owns the proceeds to the policy. Whether defendant's ownership rights in the policy are identical with rights in the proceeds depends on how the right to receive the proceeds is owned.

The owner of the policy had a right to change the beneficiary, but did not do so. This right to change the beneficiary is not involved here. See In Re Miller's Estate, supra.

■ Ownership of the policy being separate from the right to receive the proceeds and policy ownership rights not having been invoked so as to affect the right to the proceeds, ownership of the right to receive the proceeds is to be determined independently from ownership of the policy.

■ Where a third person is the insured, and a spouse the beneficiary, the ownership of policy proceeds paid to the spouse during marriage is determined by the general community property law. Applying Louisiana law, Nalle v. Young, 160 U.S. 624, 16 S.Ct. 420, 40 L.Ed. 560 (1896), held the proceeds to be separate property under the facts of the case. Applying California law, Bollinger v. Wright, 143 Cal. 292, 76 P. 1108 (1904), held the proceeds to be community property under the facts there present.

■ Here, we have an insured third person (the child) and a spouse (the defendant) as beneficiary. The proceeds were not paid during marriage. However, the right to the proceeds was obtained during mar-

riage. This right was not changed and was not divided upon the divorce.

 The right to the proceeds was a chose in action which existed prior to the death of the insured. The money received in discharge of the chose stands in the place of and is held by the same character of title as the chose. See Huie, Community Property Laws as Applied to Life Insurance, 17 Texas L.Rev. 121 (1939). This is no more than a specialized application of the rule that where property is exchanged the property obtained has the same status as the property given up in the exchange. Morris v. Waring, 22 N.M. 175, 159 P. 1002 (1916); see Laughlin v. Laughlin, supra; McElyea v. McElyea, supra.

Accordingly, we determine the ownership of the right to receive the proceeds by the general community property law of New Mexico.

Property acquired during marriage is presumed to be community property in absence of proof on the question. This presumption is applicable to insurance proceeds. In Re White's Estate, 41 N.M. 631, 73 P.2d 316 (1937). There is no proof on the question. Accordingly, the presumption is applicable.

We hold that defendant owned the right to receive the proceeds of the policy as community property of the parties. This right, not having been disposed of by the divorce, became the right of the parties as tenants in common.

The judgment is reversed. The cause is remanded with instructions to set aside the judgment and proceed in a manner consistent herewith.

It is so ordered.

CHAVEZ, C. J., and MOISE, J., concur.