718 P.2d 989

In the Matter of the ESTATE OF
Manuel Felipe ALARCON, Jr.,

John HOWARD, Personal Representative of the Estate of Sandra Lee Alarcon, Deceased, Appellant,

v.

Patricia MEJIA, Personal Representative of the Estate of Manuel Felipe Alarcon, Jr., Deceased, Appellee.

No. 17690–PR.

Supreme Court of Arizona,
En Banc.

May 8, 1986.

---

Waterfall, Economidis, Caldwell & Hanshaw by Carolyn J. Knoblock, Tucson, for appellant.

Linden, Chapa & Fields by Elaine J. Whelan, Tucson, for appellee.

HOLOHAN, Chief Justice.

We granted review in this case to determine the proper disposition of the proceeds of a certain term life insurance policy. We have jurisdiction pursuant to A.R.S. § 12–120.24 and Rule 23, Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

The facts are uncontested. Manuel and Sandra Alarcon were husband and wife. In March 1979 Manuel purchased a $50,000 term life insurance policy and as owner of the policy named as primary beneficiary his wife, Sandra. Manuel named no secondary beneficiary.

In November 1982 Sandra was voluntarily admitted to Palo Verde Hospital in Tucson for treatment of severe suicidal depression. On or about November 17, 1982 Manuel during a visit to the hospital informed Sandra of his intention to seek dissolution of the marriage. Following Manuel's declaration, Sandra left the hospital without permission and on the morning of November 19, 1982 she purchased a .38 caliber revolver and some ammunition. That afternoon she drove to Manuel's place of work and summoned him to meet her. When he appeared, Sandra shot him repeatedly.

Shortly thereafter, during the pursuit of Sandra by the Pima County Sheriff's Department, she shot herself in the head and later died. Manuel also died from his wounds. According to the death certificates issued for each, Sandra died exactly one-half hour before Manuel. Both died intestate.

The insured, Manuel, was designated in the life insurance policy as the owner of the policy. Sandra was named as beneficiary, but the policy provided that should the designated beneficiary die simultaneously or within ten days after the insured, the death benefit would be paid to the estate of the insured as if the beneficiary had not survived the insured.

In April 1983, the personal representative of Manuel's estate sought a declaratory judgment that the proceeds of the insurance policy belonged to Manuel's estate and that Sandra's estate was not entitled to any of the proceeds. Sandra's estate, in a separate action, filed a petition for allowance of claim against Manuel's estate, requesting the superior court to grant its claim to one-half of the insurance proceeds. The trial court joined the actions, and ruled that the proceeds of the insurance policy were properly distributed in full to Manuel's estate. The Court of Appeals reversed the judgment of the trial court, holding

that Sandra's estate was entitled to one-half of the insurance proceeds. *In re Estate of Alarcon*, 149 Ariz. 340, 718 P.2d 993 (App.1984). The personal representative of Manuel's estate filed this petition for review challenging that decision.

Two issues were presented for review.

1. Does Sandra's estate have any community property interest in the benefits of the term policy?

2. If an interest is found to exist, does Arizona law bar Sandra's estate from receiving any insurance policy benefits due to her homicidal act?

Our resolution of the first issue makes it unnecessary for us to consider the second issue.

## DISPOSITION OF PROCEDURAL ISSUE

■ Sandra's estate suggests that we should not decide this case because the petition for review was not timely filed. The petition for review was filed within 15 days after the Court of Appeals ordered petitioner's motion for reconsideration "stricken" for not directing the motion solely to discussion of specific misstatements of fact or law in the decision which should be corrected. Rule 22, Arizona R.Civ.App.Proc., 17A A.R.S.

Rule 23(a), Rules of Civil Appellate Procedure, 17A A.R.S. provides that "[w]ithin fifteen days after the filing of a decision or after the clerk has mailed notice of the determination of a motion for reconsideration any party may file ... a petition for review...." *Id.* In the present action, petitioner filed a timely motion for reconsideration with the Court of Appeals. It was, however, ordered "stricken" on the grounds that it did not comply with the requirements of Rule 22(c), Rules of Civil Appellate Procedure. Counsel for Sandra's estate argues that, by striking petitioner's motion, the Court of Appeals rendered the motion a nullity, and time for filing the petition for review must be considered from the date of the filing of the decision. We disagree. While petitioner's motion

may have run afoul of the requirements governing motions for reconsideration, the disposition of the motion constituted a "determination" under the rules. Under the rules, a petition for review can be filed within 15 days after the "determination" of a motion for reconsideration. Rule 23(a), Ariz.R.Civ.App.Proc., 17A A.R.S. We find that the petition for review was filed within the time provided by the rules.

## THE TERM POLICY

The Court of Appeals seems to have concluded that the terms of the life insurance policy purchased by Manuel were in derogation of Sandra's community property rights because the life insurance policy purchased by Manuel designated the estate as the alternate beneficiary. (149 Ariz. at 344, 718 P.2d at 997). It is undisputed that the policy premiums were paid for with community funds. It is also undisputed that Manuel had named his spouse, Sandra, as primary beneficiary of the policy. The nature of the transaction was certainly not unusual. The purchase of insurance by a husband to provide some economic security for his wife is a common and usual practice in our society. The designation of Sandra as primary beneficiary was certainly not against her rights. It was for her benefit. Does the designation of an alternate or contingent beneficiary without Sandra's knowledge or consent defeat her community property rights?

The Court of Appeals decided the foregoing question in the affirmative. We believe that this conclusion is incorrect under the circumstances of this case. The authorities relied upon by the Court of Appeals deal with situations in which someone other than the spouse is designated as beneficiary of a life insurance policy whose premiums are paid for with community funds. *See In re Estate of Alarcon*, 149 Ariz. 340, 344–345, 718 P.2d 993, 997–998, (App.1984). Under such circumstances, at the insured's death, the surviving spouse has an interest in the proceeds. The nature and extent of the interest has not been uniformly treated by the various

community property jurisdictions. Note, Common Law Concepts of Life Insurance in Community Property Jurisdictions: Recommendations for a Practical Approach, 18 ARIZ.L.REV. 182, 192–199 (1976). One approach approved in Arizona is that represented by *Gaethje v. Gaethje*, 8 Ariz.App. 47, 442 P.2d 870 (1968). The appellate court held that if the surviving spouse received an amount of property equal to at least one-half of all community property including the life insurance proceeds of the policy in issue, the third party beneficiary of the life insurance policy purchased with community funds could receive the proceeds.

◼ The policy in this case was a term policy. It had no accumulated cash value. The policy provided only a death benefit to the beneficiary upon the death of the insured. The policy had no value to the community except in the event of death. *Gaethje v. Gaethje, supra.* Upon the death of the insured, Manuel, the value of the term policy is measured by the proceeds of the policy. *Gaethje, supra,* at 52, 442 P.2d at 875. Thus, prior to her death, Sandra had no community interest in anything of value connected with the term policy except any dividends or unearned premium. Although the Court of Appeals described Sandra's interest as "a valuable contract right—the obligation of the insurer to pay such proceeds upon the death of Manuel" *In re Estate of Alarcon, supra* at 346, 718 P.2d at 999, the fact of the matter is that Sandra died before there was any obligation by the insurance company to pay the proceeds, and the record does not establish that there was either accumulated dividends or unearned premium. The result is that there was nothing of measurable value which could have passed to Sandra's estate. The value of the policy to

Sandra was dependent upon her surviving her husband in which case she would have received the proceeds as the named beneficiary. Thus, the facts in this case distinguish it from the authorities relied on by the Court of Appeals.

◼ Prior to her death Manuel had done nothing to defeat Sandra's rights under the insurance policy. When Sandra died she ceased to be a beneficiary under the insurance policy, and, at the time of her death, there was no death benefit payable on the policy. Upon her death the community of Sandra and Manuel was dissolved. *In re Estate of Pfeffer,* 16 Ariz.App. 147, 150, 492 P.2d 27, 30 (1972). As noted above, there was nothing of value in connection with the insurance policy which passed to Sandra's estate. The policy matured upon Manuel's death, and, pursuant to the provisions of the policy, the proceeds were payable to the alternate beneficiary because Sandra had predeceased Manuel. There was no community in existence at the time of Manuel's death, so the proceeds of the policy were payable to his estate as separate property.

The ruling of the superior court that the estate of Sandra had no right to any of the proceeds of the insurance policy was correct. Therefore, the opinion of the Court of Appeals is vacated, and the judgment of the superior court is affirmed.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.