IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAR -8 2012

COURT OF APPEALS
DIVISION TWO

)      2 CA-CV 2011-0072
)      DEPARTMENT A
)
In re the ESTATE OF FRED N. KIRKES.   )      O P I N I O N
)
)
_____)

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. PB20100346

Honorable Charles V. Harrington, Judge

REVERSED AND REMANDED

---

Ethan Steele                                                    Tucson

   and

Timothy A. Olcott                                         Green Valley
                                       Attorneys for Petitioner/Appellee
                                                         Gail J. Kirkes


Waterfall Economidis Caldwell Hanshaw &
  Villamana, P.C.
  By Jill D. Wiley and Corey B. Larson                    Tucson
                                    Attorneys for Respondent/Appellant
                                                       Joshua C. Kirkes

---

H O W A R D, Chief Judge.

¶1 Appellant Joshua Kirkes appeals from the trial court's grant of partial summary judgment in favor of Gail Kirkes in the probate proceedings for the estate of Fred Kirkes. Joshua argues the trial court erred by determining that Gail was entitled to half of an individual retirement account (IRA) as community property and contends that instead she was entitled to fifty percent of the entire community property estate, not half of a particular item. For the following reasons we reverse the grant of partial summary judgment and remand for further proceedings.

**Factual and Procedural Background**

¶2 The underlying facts are undisputed. Gail and Fred were married at the time of Fred's death. Joshua is Fred's son from a previous marriage. Fred named Gail as the sole beneficiary of his will. During the marriage, Fred created an IRA in his name and named Gail as the sole beneficiary. He then modified the IRA beneficiary designation, naming Joshua as beneficiary of eighty-three percent of the IRA and Gail as beneficiary of seventeen percent. Fred died. Both parties agree that all assets contained in the IRA are community property.

¶3 Gail filed a petition for declaration of rights, requesting the trial court invalidate the IRA beneficiary designation, which Joshua opposed.[1] The parties filed cross-motions for partial summary judgment on the issue. The court granted Gail's motion and denied Joshua's, declaring Gail entitled to half of the IRA. The court issued a

---

[1]Joshua does not contest that this is a proper procedure for determination of rights in an IRA.

final judgment on the issue pursuant to Rule 54(b), Ariz. R. Civ. P., and this appeal followed.

**Discussion**

¶4      We review de novo a grant of summary judgment. *Valder Law Offices v. Keenan Law Firm*, 212 Ariz. 244, ¶ 14, 129 P.3d 966, 971 (App. 2006). Summary judgment is required when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). On appeal, we must determine de novo whether the trial court correctly applied the substantive law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, ¶ 4, 7 P.3d 136, 139 (App. 2000).

¶5      Joshua argues the trial court erred by invalidating Fred's naming him as beneficiary of more than fifty percent of the IRA based on Gail's community property interest. He claims the court followed the item theory of division of community property at death, rather than the aggregate theory, asserting that Arizona has followed the aggregate theory. He asserts that under the aggregate theory the trial court should have determined whether Gail had received other property that compensated her for the diminished portion of the IRA.

¶6      Under the item theory of community property each spouse has "a one-half interest in each item of community property," whereas under the aggregate theory each spouse has "a one-half interest in the total community property when viewed in the aggregate." Charles E. Zalesky, *The Modified Item Theory: An Alternative Method of Dividing Community Property upon the Death of a Spouse*, 28 Idaho L. Rev. 1047, 1047-

3

48 (1992). One drawback to the item theory is that it prevents the decedent from being able to convey completely a particular item of community property to a non-spouse and forces joint ownership of that item. *Id.* at 1051. This case, however, does not directly involve how a community property estate must be divided. Rather, it involves one spouse's attempted transfer of a community property IRA interest to a non-spouse.

¶7 A beneficiary designation in an IRA is an allowed non-probate, non-testamentary transfer.[2] A.R.S. § 14-6101(A). However, a spouse's right to transfer community property is subject to a fiduciary duty to the other spouse's interest in the property. *Mezey v. Fioramonti*, 204 Ariz. 599, ¶ 38, 65 P.3d 980, 989 (App. 2003), *overruled on other grounds by Bilke v. State*, 206 Ariz. 462, ¶ 28, 80 P.3d 269, 275 (2003). "[A]bsent intervening equities, a gift of substantial community property to a third person without the other spouse's consent may be revoked and set aside for the benefit of the aggrieved spouse." *Id.*, *quoting Roselli v. Rio Cmtys. Serv. Station, Inc.*, 787 P.2d 428, 433 (N.M. 1990).

¶8 We have not been directed to any Arizona statute or case that uses the terms "aggregate" or "item" theory in distributing a decedent's assets. Joshua, however, argues the legislature has "directed" that community interests in all assets be divided in the aggregate by adopting A.R.S. § 14-3916. That statute states:

---

[2]This court requested supplemental briefing "on the issue of the applicability, if any, of A.R.S. §§ 14-6101 through 14-6227 to the account at issue here." Gail argues the statutes do not alter her rights to the IRA. Joshua contends §§ 14-6102 through 14-6227 do not apply in this situation. We conclude those statutes do not affect this case and we do not address them.

> In making a division or distribution of community property held in the decedent's estate, the personal representative may consider community property held outside the estate so that the division of community property held in the estate and outside the estate is based on equal value but is not necessarily proportionate.

§ 14-3916. And under A.R.S. § 14-3101(A), "the surviving spouse's share of the community property is subject to [probate] administration." We agree with the trial court that § 14-3916 does not control this case directly because we are not dealing with the distribution of estate assets. We further agree with the trial court that the statute's provision that the personal representative may consider whether the division of community property inside and outside the estate "is based on equal value but is not necessarily proportionate" is "enigmatic." But the statute clearly allows the personal representative to consider non-probate transfers of community property in distributing estate community property, thereby indicating the legislature considered the aggregate theory an acceptable method of distributing estate assets. But, by using the permissive "may," the legislature did not mandate that this theory be applied, even in distributing estate assets. Therefore, the statute, by itself, does not indicate that the court erred in using the item theory.

¶9            Although Arizona courts have not directly adopted either theory, they have dealt with the attempted alienation of more than a spouse's share of community property in the life-insurance context. In *Gristy v. Hudgens*, 23 Ariz. 339, 341, 348, 203 P. 569, 570, 572 (1922), *abrogated by Day v. Clark*, 36 Ariz. 353, 357, 285 P. 682, 683 (1930), the Arizona Supreme Court considered a case in which life-insurance premiums

5

potentially had been paid with community-property funds, but a third party had been designated as the beneficiary. It held that even if the premiums had been paid with community property, any insurance benefits paid to a non-spouse did not defraud the wife, in part because there existed "no showing that the wife had not received even more than her share of the community property." *Gristy*, 23 Ariz. at 348, 203 P. at 572. Similarly, in *Gaethje v. Gaethje*, 7 Ariz. App. 544, 546, 441 P.2d 579, 581 (1968), this court was asked to determine the validity of a life-insurance policy beneficiary designation which named a son as the beneficiary instead of the deceased's spouse. We relied on *Gristy* in holding that when a deceased spouse has made a testamentary or non-testamentary provision for the surviving spouse, under which the surviving spouse receives at least half of the community property, "then there has been no 'fraud' upon [the surviving spouse's] rights and the designation of beneficiary should stand effective." *Gaethje*, 7 Ariz. App. at 547, 549, 441 P.2d at 582, 584. However, if the surviving spouse did not receive half the community property, then "there would be a constructive fraud upon [the surviving spouse's] rights and the designation would be ineffective to the extent of such constructive fraud." *Id.* at 549, 441 P.2d at 584.

¶10        In considering the benefits from a life-insurance policy, the Arizona Supreme Court recognized the method of allocating community property in *Gaethje* as "[o]ne approach approved in Arizona," but did not identify any other approved methods. *In re Estate of Alarcon*, 149 Ariz. 336, 339, 718 P.2d 989, 992 (1986). And this court repeatedly has cited the approach in *Gaethje* in subsequent cases concerning life-insurance proceeds. *See, e.g.*, *In re Estate of Agans*, 196 Ariz. 367, ¶ 4, 998 P.2d 449,

6

450 (App. 1999); *Guerrero v. Guerrero*, 18 Ariz. App. 400, 402, 502 P.2d 1077, 1079 (1972), *abrogated by* § 14-6101; *Carpenter v. Carpenter*, 150 Ariz. 130, 135, 722 P.2d 298, 303 (App. 1985), *vacated in part on other grounds by Carpenter v. Carpenter*, 150 Ariz. 62, 63, 722 P.2d 230, 231 (1986).

¶11 Gail, however, suggests the Arizona Supreme Court earlier implicitly had applied the item theory in *La Tourette v. La Tourette*, 15 Ariz. 200, 137 P. 426 (1914), *abrogated by Mortensen v. Knight*, 81 Ariz. 325, 331, 305 P.2d 463, 467 (1956). However, *La Tourette* did not address which theory to apply but instead set forth the rule that a wife had an interest in community property before her husband's death, although she acquired management and control of her share only at his death. 15 Ariz. at 207-08, 137 P. at 428-29. Thus, *La Tourette* is inapposite.

¶12 Gail also argues that in *In re Monaghan's Estate*, 65 Ariz. 9, 22-23, 173 P.2d 107, 115 (1946), our supreme court applied the item theory when it held that only the decedent's share of real property could be sold to pay probate expenses. However, the court considered only the issue of whether the wife's portion of community property could be sold to satisfy probate expenses; it did not consider or adopt either theory of community property disposition. *In re Monaghan's Estate*, 65 Ariz. at 22-23, 173 P.2d at 115. Gail further relies on *Propstra v. United States*, 680 F.2d 1248, 1250-51, 1251 n.3 (9th Cir. 1982), but that case dealt with valuation of an estate for federal tax purposes and not whether Arizona followed the "item" or "aggregate" method for determining community property interests in the administration of an estate. Furthermore, "federal decisions on state law issues do not bind us." *Dube v. Likins*, 216 Ariz. 406, ¶ 37, 167

7

P.3d 93, 104 (App. 2007). We conclude Arizona cases have adopted and relied on *Gaethje*'s approach in the context of life-insurance proceeds and have not clearly adopted or rejected an item theory.

¶13 Gail next contends that prior Arizona cases concerning life-insurance beneficiary designations should not control, because retirement accounts are of a "special nature." She argues retirement accounts are intended to provide financial security for a surviving spouse. She further suggests that we adopt a "modified item theory" in which most community property is distributed on an item basis, but fungible property is distributed on an aggregate basis. *See* Zalesky, *supra*, at 1067-70. Gail argues that the item theory should apply here again because of the special nature of retirement accounts.

¶14 However, both life-insurance policies and retirement-account beneficiary designations are methods of allocating assets for the future, and both may be used to provide for a surviving spouse. Moreover, both proceeds from life-insurance policies and IRA assets are fungible, in that they are money or may be sold easily. Even under a modified item theory, which we do not adopt here, fungible assets are divided in the aggregate. *Id.* Although Gail analogizes the IRA to other retirement plans governed by federal law, she concedes those statutes do not apply here. Therefore, Gail has failed to differentiate an IRA beneficiary designation from a life-insurance beneficiary designation or demonstrate that the item theory was properly employed here. Rather, applying the same rule that applies to a life-insurance beneficiary designation to an IRA beneficiary designation achieves consistency in related legal issues.

8

¶15 Gail further relies on a case from Louisiana in which the court differentiated between profit-sharing plans and life-insurance policies. *T. L. James & Co. v. Montgomery*, 332 So. 2d 834, 844-45 (La. 1975). But, in that case, the court acknowledged that the Louisiana Constitution and civil code always had treated life insurance distinctly and, therefore, the court did not apply general statutes and principles of law to life insurance. *Id.* at 845. Gail provides no authority for the proposition that Arizona historically has treated life-insurance policies in a distinct way. Instead, § 14-6101(A) includes both individual retirement plans and insurance policies in its list of non-probate transfers which are non-testamentary. Thus, we would not find this Louisiana precedent to be persuasive in any event. *Ramsey v. Yavapai Family Advocacy Ctr.*, 225 Ariz. 132, ¶ 32, 235 P.3d 285, 294 (App. 2010).

¶16 One purpose of the probate code and related case law is to effect a decedent's intent in distributing property. A.R.S. § 14-1102(B)(2); *In re Estate of Shumway*, 198 Ariz. 323, ¶ 7, 9 P.3d 1062, 1065 (2000). As the trial court found, Fred intended that Joshua receive eighty-three percent of the IRA and Gail receive seventeen percent. Employing the item theory here would defeat Fred's intent. Furthermore, Gail has failed to differentiate an IRA beneficiary designation from a life-insurance beneficiary designation; both direct the transfer of money to a recipient. Thus, we conclude the purpose expressed in § 14-1102(B)(2), the reasoning in *Gaethje*, and the legislative intent expressed in § 14-3916 control the IRA beneficiary designation here. We reverse the trial court's grant of summary judgment in favor of Gail.

9

¶17 Joshua argues the trial court erred by not granting his cross-motion for summary judgment, contending Gail did not present evidence the beneficiary designation resulted in a fraud on her interest. But under the IRA beneficiary designation, Joshua would receive more than fifty percent of a community asset. And, the law concerning this issue was unclear. The more equitable result is to allow both parties to marshal whatever evidence is relevant to the legal issue as clarified above.

**Conclusion**

¶18 For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of Gail and remand for proceedings consistent with this decision.

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

CONCURRING:

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge

10